706 A.2d 608

Earl BESHEARS

v.

Wayne F. WICKES.

No. 66, Sept. Term, 1997.

Court of Appeals of Maryland.

March 9, 1998.

Richard B. Rosenblatt, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for petitioner.

Stephen Z. Meehan, Deputy Principal Counsel (David C. Wright, Principal Counsel; Joseph B. Tetrault, Staff Atty., Prisoner Rights Information System of Maryland, Inc., on brief), Chestertown, for respondent.

Argued before BELL, C.J., ELDRIDGE, RODOWSKY, CHASANOW, RAKER and WILNER, JJ., and DALE R. CATHELL, Judge (Specially Assigned).

CHASANOW, Judge.

We are once again called upon to determine the effect of a 1992 amendment to Maryland Code (1957, 1996 Repl.Vol., 1997 Supp.), Article 27, § 700,[1] the Maryland statute governing the calculation of diminution credits for inmates in Maryland. Specifically, this case presents the issue of whether an inmate who served time for a violent offense prior to 1992 and who was then released on mandatory supervision pursuant to the application of diminution credits may, upon re-incarceration for a subsequent nonviolent offense, take advantage of a 1992 increase in the number of good-conduct credits earned per month for nonviolent offenders. We believe our recent decision in *Md. House of Correction v. Fields*, 348 Md. 245, 703 A.2d 167 (1997) is controlling. For the reasons set forth below, we shall affirm the trial court's grant of habeas corpus relief for Wickes and hold that these sentences constitute different terms of confinement and, therefore, the inmate may earn good-conduct credits at the post–1992 rate with respect to a subsequent nonviolent offense.

## FACTS

In 1979, Appellee Wayne F. Wickes was sentenced to 20 years imprisonment for rape.[2] Through the application of 2076 diminution credits, Wickes was conditionally released on mandatory supervision in May of 1993. Of these diminution credits, 1139 were good-conduct credits calculated at a rate of five days per month pursuant to Md.Code (1957, 1976 Repl. Vol.), Art. 27, §§ 700(b) & 704A(1). In October 1992, § 700 was amended to provide for good-conduct credits at the rate of

---

1. Unless otherwise indicated, all statutory references are to Maryland Code (1957, 1996 Repl.Vol., 1997 Supp.), Article 27.

2. Rape is deemed a crime of violence under Md.Code (1957, 1996 Repl.Vol.), Art. 27, § 643B.

ten days per month for a term of confinement not including a sentence for certain drug-related crimes or crimes of violence. Chapter 588 of the Acts of 1992; *see also Fields,* 348 Md. at 250, 262, 703 A.2d at 170, 176. However, "[f]or an inmate whose term of confinement includes a consecutive or concurrent sentence for either a crime of violence as defined in Article 27, § 643B of the Code or a crime of manufacturing, distributing, dispensing, or possessing a controlled dangerous substance as provided under Article 27, § 286," good-conduct credits are to be calculated at a rate of five days per month. § 700(d)(2).

On October 18, 1995, Wickes was convicted of third-degree burglary and sentenced to seven years imprisonment. Because the burglary conviction constituted a violation of his conditional release, a revocation hearing was held before the Maryland Parole Commission (MPC). At the hearing on April 26, 1996, MPC revoked Wickes's mandatory release, awarded him 22 months street-time credits pursuant to Md.Code (1957, 1993 Repl.Vol., 1996 Supp.), Art. 41, § 4–511, and rescinded 1000 good-conduct credits. As a result, Wickes was re-incarcerated. Upon his return to custody, the Division of Correction (the Division) calculated good-conduct credits for Wickes's third-degree burglary conviction, not deemed a violent offense under § 643B, at a rate of five days per month despite the amendment to § 700. The Division maintains that the lower rate was proper because Wickes's 1979 conviction of a violent offense (rape), a sentence which overlapped with and should thus aggregate into a single term of confinement with his sentence for burglary, precluded him from earning good-conduct credits at a rate of ten days per month under § 700. By these calculations, Wickes's mandatory supervision release date was set as October 21, 2000.

Dissatisfied with the manner in which these good-conduct credits were awarded, Wickes filed a petition for writ of habeas corpus on April 22, 1997 in the Circuit Court for Somerset County, claiming that the Division erred in calculating his mandatory supervision release date and that, had the Division properly calculated his diminution credits, he would

be entitled to immediate release. Wickes argued that he should have been awarded good-conduct credits for the burglary offense at a rate of ten days per month and that the Division's refusal deprived him of 413 credits.[3] The circuit court held that Wickes was entitled to be awarded good-conduct credits at the rate of ten days per month for his post–1992 conviction and ordered the Division to recalculate Wickes's sentence for burglary. The Division[4] appealed to the Court of Special Appeals, and this Court, on our own motion, issued the writ of certiorari prior to a judgment by the intermediate appellate court.

## ANALYSIS

At issue in this case is the meaning of the phrase "term of confinement" as used in both § 700 and the effective date clause to the 1992 amendment to that section. *See* Ch. 588 of the Acts of 1992. Section 700 provides for the calculation of diminution credits, "credits which can be 'earned by inmates to reduce the lengths of their confinements.'" *Fields*, 348 Md. at 261, 703 A.2d at 175 (quoting *Frost v. State*, 336 Md. 125, 128, 647 A.2d 106, 107 (1994)). These credits accumulate until the inmate has "sufficient credits to earn entitlement to release," at which point "the inmate is deemed

---

**3.** Wickes also claimed that the Division improperly calculated the effect of his street-time credits on his mandatory supervision release date. In light of the Court of Special Appeals decision, affirmed by this Court, in *Md. House of Correction v. Fields*, 113 Md.App. 136, 686 A.2d 1103 (1996), *aff'd*, 348 Md. 245, 703 A.2d 167(1997), the Division recognized its error, and that issue was resolved prior to the hearing in the Circuit Court for Somerset County.

**4.** The Appellant actually named here is Earl Beshears, the warden of the Eastern Correctional Institution where Wickes was incarcerated, because "inmates are required to direct their petitions for habeas corpus to the 'person having custody of the individual confined or restrained.' Maryland Rule 15–305." *Md. House of Correction v. Fields*, 348 Md. 245, 249 n. 1, 703 A.2d 167, 169 n. 1 (1997). We shall refer to Appellant, however, as the "Division of Correction" or "Division" because the Division of Correction was the unit of the Department of Public Safety and Correctional Services responsible for calculating the contested credits.

released under '[m]andatory supervision.'" *Id.* Good-conduct credits, which are awarded prospectively subject to an inmate's future good-conduct, are one type of diminution credit. § 700; *see also Fields,* 348 Md. at 262, 703 A.2d at 175–76. Prior to 1992, these good-conduct credits were awarded at a rate of five days per month regardless of the crime for which the inmate was incarcerated. Md.Code (1957, 1992 Repl.Vol.), Art. 27, § 700(d)(2); *see also Fields,* 348 Md. at 262, 703 A.2d at 176. Amended in 1992, § 700 now provides, in pertinent part, different rates depending on the type of crime:

"(d) Good conduct deduction.—* * *

(2) For an inmate whose *term of confinement* includes a consecutive or concurrent sentence for either a crime of violence as defined in Article 27, § 643B of the Code or a crime of manufacturing, distributing, dispensing, or possessing a controlled dangerous substance as provided under Article 27, § 286 of the Code, this deduction shall be calculated at the rate of 5 days for each calendar month, and on a prorated basis for any portion of a calendar month, from the first day of commitment to the custody of the Commissioner through the last day of the inmate's maximum term of confinement.

(3) For all other inmates, this deduction shall be calculated at the rate of 10 days for each calendar month, and on a prorated basis for any portion of a calendar month, from the first day of commitment to the custody of the Commissioner through the last day of the inmate's maximum term of confinement." (Emphasis added).

The legislature, however, expressly limited the application of the statute as amended to "a *term of confinement* imposed on or after October 1, 1992." Ch. 588 § 2 of the Acts of 1992 (emphasis added).

Section 700(a) also contains a definition of "term of confinement":

"(1) The length of the sentence for a single sentence; or (2) The period from the first day of the sentence beginning first through the last day of the sentence ending last for: (i)

Concurrent sentences; (ii) Partially concurrent sentences; (iii) Consecutive sentences; or (iv) A combination of concurrent and consecutive sentences."

Importantly, this definition does not specify that it is applicable to "all of the sentences an inmate is currently serving." Moreover, this definition was

"not amended by the 1992 amendment. In fact, as the Court of Special Appeals noted . . . in one of its opinions [reviewed by this Court in *Fields* ], 'it appears that the Legislature gave little thought to the definition of "term of confinement" when it enacted Ch. 588 [the 1992 amendment to § 700].' "

*Fields,* 348 Md. at 264, 703 A.2d at 177. Furthermore,

"[a] Senate Judicial Proceedings Committee floor report explaining House Bill 1089, which changed the rate for awarding good-conduct credits, used the term *sentence* rather than *term of confinement* and stated that: 'This bill may be applied prospectively only (i.e. to persons *sentenced* on or after the effective date of the bill).' (Emphasis added). Shortly after the statute at issue was enacted, one of the sponsors of that bill, Delegate John Arnick, was asked to explain the bill. He stated: 'If a person is *sentenced* before October 1, he is not eligible for the additional credits. A person *sentenced* on or after October 1 will receive the additional credits.' (Emphasis added)."

*Fields,* 348 Md. at 265, 703 A.2d at 177. Thus, in *Fields,* we noted that the definition of term of confinement is "not as clear as the Division would have us believe." 348 Md. at 265, 703 A.2d at 177.

Significant to our interpretation of the phrase "term of confinement" is our decision in *Fields.* In *Fields,* habeas plaintiffs, Fields and Hood, each with both pre–1992 and post-1992 sentences, challenged the Division's calculation of their good-conduct credits. As it did in the case *sub judice,* the Division grouped all of each inmate's sentences into one single "term of confinement" and awarded all good-conduct credits at the pre–1992 rate of five days per month. Addressing the

effect of the 1992 amendment on the application of subsection (d)(3) to the sentences of inmates who are serving one or more pre–1992 sentences in addition to one or more post–1992 sentences, we rejected the Division's aggregation of all sentences into one single term of confinement. Consequently, we concluded that Hood and Fields were "entitled to good-conduct credits at the rate of ten days per month for those sentences imposed at a new sentencing after October 1, 1992, and a rate of five days per month for those sentences imposed at a sentencing prior to October 1, 1992." *Fields,* 348 Md. at 261, 703 A.2d at 175.

The Division asserts that the instant case is distinguishable from *Fields* because, unlike in *Fields,* Wickes's pre–1992 conviction was for a crime of violence,[5] and thus, it was proper to apply the five days per month rate for the entire term of confinement. Arguing that *Fields* is inapplicable because it did not address § 700(d)(2), the Division urges us to read subsection (d)(2) to mean that, any time an inmate is serving a sentence for a violent crime, the inmate may only receive credits at the rate of five days per month with respect to any other sentence imposed. According to this theory, the sentences Wickes is serving for both the rape and third-degree burglary convictions aggregate to form one single term of confinement subject to the lower rate. Wickes posits that even though these sentences are overlapping, they constitute separate terms of confinement, and therefore, he is entitled to receive ten good-conduct credits per month for his burglary sentence. Because he was released on mandatory supervision on his first sentence when he received his second sentence, we agree with Wickes.

---

5.  One of Fields's convictions was for housebreaking which at the time of sentencing was listed as a crime of violence under § 643B. Housebreaking, however, was later removed from the list of violent offenses. Fields was also convicted of a drug-related offense, however, as we noted in *Fields,* "Fields's conviction for possession of heroin was not under § 286, but rather under § 287 and, thus, would not be deemed drug related in the context of" § 700(d)(2). *Fields,* 348 Md. at 250 n. 3, 703 A.2d at 170 n. 3.

■ In *Fields,* we specifically rejected "the notion that all sentences that overlap or run consecutively must aggregate for all purposes to a single term of confinement." 348 Md. at 267, 703 A.2d at 178. Today, we expand on this in concluding that "term of confinement" does not aggregate sentences imposed before and after the defendant is released on mandatory supervision. Where a defendant is released on mandatory supervision and later commits and is sentenced for a new crime, we hold that the new sentence and the old sentence reimposed upon revocation of mandatory supervision release do not aggregate to form one term of confinement for the purpose of § 700. The rate at which an inmate is awarded good-conduct credits should not depend on the Maryland Parole Commission's decision to revoke mandatory supervision release for a prior conviction based on a subsequent offense.

■ Our decision today is consistent with the legislative history of "term of confinement" as it is used in § 700. The definition of "term of confinement" found in subsection (a) of § 700 originated in Ch. 354 of the Acts of 1991, which "indicates that it was designed 'to ensure that inmates serving more than one sentence at a time [would] not receive good-conduct credits for more than one sentence.'" *Fields,* 348 Md. at 264–65, 703 A.2d at 177. Moreover, we note that there is no indication that, with respect to § 700, the legislature intended to distinguish between those inmates who are re-incarcerated for a subsequent offense while on mandatory supervision release for a prior offense and those inmates who are re-incarcerated after the expiration of their mandatory supervision release. *Fields,* 348 Md. at 267, 703 A.2d at 178 (noting that the legislature surely "did not indicate an intent to make such a nonsensical distinction"). In *Fields,* we described the absurd consequence that would result if that distinction were made with respect to two nonviolent offenses under subsection (d)(3), one pre–1992 and one post–1992:

> "If A were released 250 days prior to the expiration of A's sentence under mandatory supervision on a sentence which was imposed prior to October 1, 1992, for example, the result of a subsequent conviction imposed after October 1,

1992, using the method of calculating good-conduct credits advocated by the Division, would be dramatically different based on whether A committed the subsequent crime on day 249 or day 251 after his release. If A committed the subsequent violation on the 249th day of mandatory supervision, A would be awarded good-conduct credits on the new offense at the rate of five days per month, whereas if A committed the same subsequent offense on the 251st day, one day after the mandatory supervision expired, A would be awarded good-conduct credits at the rate of ten days per month."

*Fields,* 348 Md. at 266–67, 703 A.2d at 178. Although this case presents a slightly different twist, *i.e.* involves subsection (d)(2) rather than (d)(3), we believe our *Fields* analysis is equally applicable here.

We also observe that the legislature specifically restricted cases where an inmate could only earn credits at the rate of five days per month to those cases where the inmate's "term of confinement includes a consecutive or concurrent sentence for either" a specified crime of violence or a drug-related offense. § 700(d)(2). The legislature might have said, but did not, that an inmate who has a prior or previous conviction for any of the specified offenses would only be eligible to earn five days of good-conduct credits per month during any subsequent sentence. Instead the legislature used the phrase "consecutive or concurrent." We refuse to read the terms "prior" or "previous" into subsection (d)(2).

Finally, we reiterate our rejection of the Division's argument, posited in *Fields,* that to calculate separate rates for separate terms of confinement being served consecutively "would be difficult to administer." 348 Md. at 265, 703 A.2d at 177. We do not believe such calculations would be so complicated. An inmate may have two different mandatory release dates just as the inmate may serve concurrent sentences of different lengths. For example, an inmate is serving concurrent overlapping sentences A and B. Sentence A is a ten-year sentence for a crime of violence imposed on January 1, 2000. The inmate is released on mandatory supervision 600 days

early (10 years $\times$ 5 credits/month $\times$ 12 months/year = 600 good-conduct credits).[6] While out on mandatory supervision release, the inmate receives sentence B, a ten-year sentence for a nonviolent, non-drug related offense imposed on January 1, 2009, which would terminate on January 1, 2019 without the application of any good-conduct credits. Because this subsequent offense violates the conditions of the inmate's mandatory release, his mandatory supervision release is revoked and he must now serve the 600 days remaining on sentence A, which he also began serving on January 1, 2009. Thus, the inmate's mandatory release date with respect to sentence A will be in August of 2010. Unless the inmate's B sentence is reversed, however, the inmate will not actually be released in August of 2010 because with regard to sentence B, the inmate will not be eligible for mandatory supervision release until September of 2015 (more than 3 years early through the application of good-conduct credits at a rate of ten days per month—10 years $\times$ 10 credits/month $\times$ 12 months/year = 1200 good-conduct credits). In other words, even though these sentences overlap, the inmate will have two different mandatory release dates. Similarly, if sentence B were for one year, the mandatory supervision release date would be August of 2010, instead of September of 2009. Moreover, as we said in *Fields*, "[w]e should not adopt the Division's theory merely because to do otherwise would saddle the Division with more complex calculations." 348 Md. at 265, 703 A.2d at 177.

■ Thus, we conclude that the sentencing of a defendant for a subsequent offense while he is out on mandatory supervision release for a prior offense is a separate sentencing event. Here, it is clear that a sentence imposed in 1979 is not part of the same sentencing event as a sentence imposed in 1995 while the defendant was out on mandatory supervision for the 1979 offense. Thus, Wickes's sentences for the violent offense of rape and the nonviolent offense of third-degree burglary are

---

**6.** This Court recognizes that the Division may award inmates diminution credits other than good-conduct credits. We, however, limit our example to good-conduct credits.

part of two separate sentencing events and, therefore, are to be deemed separate terms of confinement. Because we agree with the trial court's conclusion that with respect to his burglary conviction Wickes is entitled to be awarded good-conduct credits at the post–1992 rate for the nonviolent, non-drug related offense, we affirm the trial court's decision.

*JUDGMENT OF THE CIRCUIT COURT FOR SOMERSET COUNTY AFFIRMED. COSTS IN THIS COURT TO BE PAID BY APPELLANT.*