Dear Secretary Simms:
You have requested our opinion concerning the computation of good-conduct credits for inmates in light of a recent trilogy of decisions on that topic by the Court of Appeals.
In our opinion the following principles should guide the computation of good-conduct credits by the Division of Correction ("DOC"):
1. As a general rule, an inmate subject to multiple sentences serves a single term of confinement that begins on the first day of the sentence that begins earliest and ends on the last day of the sentence that ends last. However, in certain circumstances, sentences must be considered separately for purposes of computing good-conduct credits.
2. For all sentences imposed before October 1, 1992, an inmate is entitled to good-conduct credits at the rate of 5 days per month.
3. For all sentences imposed on or after October 1, 1992, so long as none of those sentences is for a crime of violence or a drug offense as described in the Annotated Code of Maryland, Article 27, § 700(d)(2), an inmate is entitled to good-conduct credits at the rate of 10 days per month. This is true even if the inmate's term of confinement includes sentences imposed before October 1, 1992, for violent crimes or drug offenses.
4. For all sentences imposed on or after October 1, 1992, if at least one of those sentences is for a crime of violence or a drug offense as described in Article 27, § 700(d)(2), an inmate is entitled to good-conduct credits at the rate of 5 days per month.
5. If a sentence is imposed on or after October 1, 1996, for a crime committed while the defendant was on parole and parole is revoked, good-conduct credits earned prior to the defendant's release on parole may not be applied to the current term of confinement.
In this regard, we agree with the advice previously provided to you by Assistant Attorney General Alan D. Eason.
 I Computation of Good-Conduct Credits
A. Diminution Credits
An inmate incarcerated in the State correctional system may earn a variety of credits that reduce the length of his incarceration. There are four types of diminution credits: good-conduct, work, educational, and special projects. Annotated Code of Maryland, Article 27, § 700(d)-(h). Good-conduct credits are unique in that they are deducted in advance from the inmate's term of confinement, apparently on the optimistic assumption that the inmate will indeed exhibit good conduct during the course of his confinement. Article 27, § 700(d). If an inmate violates applicable rules of discipline, the DOC may revoke all or part of the good-conduct credits that have been advanced to the inmate. Article 27, § 700(g).
An inmate can earn an aggregate maximum of up to 20 days credit each month. Article 27, § 700(i). An inmate who is released prior to the expiration of the full term of his sentences, as a result of good-conduct credits and other deductions, is on "mandatory supervision" — or conditional release from imprisonment. Article 41, § 4-501(13). Mandatory supervision release is distinct from "parole," which is another form of conditional release granted at the discretion of the Maryland Parole Commission. Article 41, §§ 4-501(5), 4-504.
A person on mandatory supervision is subject to all laws, regulations, and conditions applicable to parolees. Article 41, § 4-612(c). A person who violates the conditions of mandatory supervision is subject to revocation of good-conduct credits and return to prison for the remainder of his sentence.[1]
B. 1992 Amendment
In 1992, the Legislature made a significant change in the manner in which good-conduct credits are calculated. Chapter 588, Laws of Maryland 1992, codified at
Article 27, § 700(d)(2)-(3). Under prior law, inmates were entitled to 5 days of good-conduct credits for each month of a term of confinement. The 1992 amendment increased the rate to 10 days of good-conduct credits per month; however, if the term of confinement included a sentence for a crime of violence or certain drug offenses, good-conduct credits would only be awarded at the rate of 5 days per month. Id. The legislation specified that the new method of computation applied to "a term of confinement imposed on or after October 1, 1992."
The application of the phrase "term of confinement" has bedeviled those who must construe this statute in light of the 1992 amendment. The statutory definition of the phrase appears to be straightforward:
(a) In this section, "term of confinement" means:
(1) The length of the sentence for a single sentence; or
 (2) The period from the first day of the sentence beginning first through the last day of the sentence ending last for:
(i) Concurrent sentences;
(ii) Partially concurrent sentences;
(iii) Consecutive sentences; or
(iv) A combination of concurrent and consecutive sentences.
Article 27, § 700(a). Thus, according to the literal language of the statute, an inmate serves a single term of confinement that may consist of several sentences running concurrently or consecutively. The 1992 law did not change this definition.
On its face, the phrase "term of confinement" appears to encompass all sentences being served by an inmate, even if there are multiple sentences imposed on different dates. However, the effective date provision of the 1992 amendment concerning the computation of good-conduct credits is keyed to the date the "term of confinement" was "imposed" — suggesting the possibility that an inmate may simultaneously serve multiple terms of confinement with different dates of imposition. This is more than an academic question when an inmate is serving sentences imposed before and after the critical date of October 1, 1992. One attempting to give a sensible construction to the statute must elect either to aggregate sentences and assign a single date of imposition to the aggregate term or recognize multiple dates of imposition, in apparent contradiction of the literal definition of "term of confinement." This choice has understandably generated some confusion among those who compute good-conduct credits.
As Judge Wilner has summarized the problem:
 The 1992 law immediately created a distinction between inmates serving one or more sentences for a crime of violence or a listed drug offense and inmates incarcerated for other crimes. That, when coupled with the prospectivity language of Section 2 of the Act, created a double problem: it brought into question whether an inmate serving a sentence imposed prior to October 1, 1992 as well as a sentence imposed after that date was entitled to the additional five days a month credit on the later sentence and, even if such an inmate ordinarily would get the additional credit, it raised the question whether that would be the case if the earlier sentence was for a violent or listed drug offense.
Henderson v. Secretary of Public Safety and CorrectionalServices, 351 Md. 438, 718 A.2d 1150, 1152 (1998).
In three recent cases, the Court of Appeals has attempted to provide definitive guidance. In the first two cases, the Court unanimously adopted an interpretation of the statute. When that approach led to unanticipated consequences, the Court in its most recent case modified that interpretation in a divided decision.
 II Recent Decisions of the Court of Appeals
A. Maryland House of Correction v. Fields
The Court of Appeals first confronted the anomalies created by the 1992 amendment in three cases consolidated on appeal inMaryland House of Correction v. Fields, 348 Md. 245,703 A.2d 167 (1997). Each of the cases before the Court in Fields
involved inmates who had been released on mandatory supervision for sentences imposed prior to the effective date of the 1992 amendment. In each case, as a result of subsequent convictions, good-conduct credits were rescinded and mandatory supervision release was revoked. As a result, additional sentences were imposed and, in some cases, suspended sentences were reimposed, after the effective date of the 1992 amendment that accelerated the award of good-conduct credits. On the theory that the sentences awarded after October 1, 1992, were part of a single term of confinement imposed prior to the effective date of the 1992 amendment, the DOC aggregated the sentences imposed before and after that date and calculated good-conduct credits at the "old rate" of 5 days per month.
The Court rejected the DOC's method of computation and held that, for purposes of computing good-conduct credits under the amended law, sentences imposed before October 1, 1992, were to be treated separately from those imposed after that date.[2] It noted that, under the DOC's method of aggregating sentences, a person sentenced after the effective date of the 1992 law for a non-violent, non-drug crime would not obtain the benefit of the amendment's new rate of 10 days good-conduct credit per month. The Court conceded that the statute suggested that a prisoner served a single "term of confinement," but delved into the legislative history of the amendment to support a contrary interpretation of the statute.
The Court quoted a bill analysis of the 1992 amendment prepared for the General Assembly that indicated that the purpose of the amendment was to move non-violent offenders through the prison system at a faster pace in order to reduce overcrowding. Sponsors of the amendment apparently understood that the new rate for good-conduct credits would apply to anyone sentenced on or after the effective date of the amendment. 348 Md. at 263. In addition, the Court also noted that the effective date provision had been added to the bill to meet the DOC's concern that the amendment otherwise would have required the retroactive computation of credits for inmates in prison at the time of its passage. Id. at 264.
The Court then turned to the definition of "term of confinement," which predated the 1992 amendment. The Court pointed out that the definition had been designed to ensure that persons serving more than one sentence at a time would not receive good-conduct credits for more than one sentence at a time. Id. at 264-65. A "commonsensical" construction of that phrase did not require aggregation of all sentences served by an inmate for purposes of computing good-conduct credits under the 1992 amendment. Id. at 265-66.
Finally, the Court applied the "rule of lenity," which requires that any ambiguity in penal statutes be construed against the State and in favor of the defendant. 348 Md. at 267-68. Accordingly, it held that an inmate should earn good-conduct credits at the rate of five days per month for the sentences that were imposed prior to October 1, 1992 and at the rate of 10 days per month for sentences imposed on or after that date for non-violent, non-drug offenses. Id. at 268-69.
B. Beshears v. Wickes
A slightly different permutation presented itself in the Court's next encounter with the statute in Beshears v. Wickes,349 Md. 1, 706 A.2d 608 (1998). That case involved an inmate who had been sentenced for a violent crime prior to the effective date of the 1992 amendment and who, after release on mandatory supervision, was convicted and sentenced for a non-violent offense after October 1, 1992. The question before the Court was whether the inmate should receive good-conduct credits with respect to the latter non-violent offense at the rate of 10 days per month for non-violent offenses under the 1992 amendment or whether he would be limited to 5 days per month for that sentence because it was part of a single term of confinement including a violent offense.
The Court reiterated its reasoning in Fields and held that the two sentences constituted "separate terms of confinement."349 Md. at 8. Accordingly, Wickes could receive the benefit of the 1992 amendment for his subsequent non-violent offense and earn good-conduct credits at the post-1992 rate of 10 days per month with respect to that sentence.
The Court explained the basis of its holding:
 In Fields, we specifically rejected "the notion that all sentences that overlap or run consecutively must aggregate for all purposes to a single term of confinement." Today, we expand on this in concluding that "term of confinement" does not aggregate sentences imposed before and after the defendant is released on mandatory supervision. Where a defendant is released on mandatory supervision and later commits and is sentenced for a new crime, we hold that the new sentence and the old sentence reimposed upon revocation of mandatory supervision release do not aggregate to form one term of confinement for the purpose of § 700. The rate at which an inmate is awarded good-conduct credits should not depend on the Maryland Parole Commission's decision to revoke mandatory supervision release for a prior conviction based on a subsequent offense.
349 Md. at 9 (emphasis added; citations omitted). This elaboration of the rationale for the decision in Wickes
resulted in consequences apparently unintended by a majority of the Court.
C. Department of Public Safety and Correctional Services v. Henderson
Following the decisions in Wickes and Fields, the DOC recalculated the sentences of more than 2000 inmates serving multiple sentences to desegregate sentences in accordance with the apparent direction of the Wickes opinion. For some inmates this recalculation resulted in a longer period of confinement. InSecretary of Public Safety and Correctional Services v.Henderson, 351 Md. 438, 718 A.2d 1150 (1998), one such inmate challenged this method of computation and the Court considered the ramifications of the language in its opinion in Wickes.
Henderson was convicted of a violent offense in 1975 for which he received a sentence of 20 years imprisonment. He was released on parole twice and returned to custody on both occasions for parole violations. His second parole revocation was the result of a 1994 conviction on a drug violation for which he received a 10-year sentence. In accordance with its previous practice of aggregating sentences and diminution credits, the DOC originally computed Henderson's mandatory release date by aggregating his 1975 and 1994 sentences and then subtracting the total diminution credits to arrive at a mandatory release date of July 7, 1997.
Some months after Henderson's release, the Court of Appeals issued its opinion in the Wickes case, in which it stated that "[w]hen a defendant is released on mandatory supervision and later commits . . . a new crime, the new sentence and the old sentence . . . do not aggregate to form one term of confinement for the purpose of § 700." Wickes, 349 Md. at 9. Following the apparent dictate of that holding, DOC computed separate release dates for each of Henderson's sentences and arrived at a mandatory release date in February 2002 for the more recent sentence. As a result, Henderson was arrested and returned to custody.
It is notable that, unlike the cases in Fields and Wickes, there was no question whether Henderson was eligible for good-conduct credits at the "new rate" of 10 days per month under the 1992 amendment. Both of Henderson's convictions were for drug or violent crimes. Accordingly, under any reading of the statute, he was limited to 5 days per month good-conduct credits. Nevertheless, those decisions resulted in the termination of his mandatory supervision release and his return to custody.
Henderson filed a habeas corpus petition. The circuit court granted the petition on constitutional grounds, holding that the State had denied him due process of law and had violated the proscription against ex post facto punishments.
On appeal, the Court of Appeals declined to reach the constitutional questions, but instead refined its construction of § 700 to affirm the circuit court. In a 4-3 decision, the Court disavowed the broad language in Wickes that sentences imposed for new convictions should not be aggregated with those for prior convictions. Writing for the majority, Judge Wilner reasoned that the results in both Fields and Wickes were justified on a narrower ground than a general rule against aggregation of sentences. He summarized that narrower justification:
 The predominant reasoning in both cases was that, through the enactment of Ch. 588 in 1992, the General Assembly directed that inmates be allowed ten days a month good conduct credit against sentences imposed on or after October 1, 1992 for non-violent, non-drug offenses, and that, to the extent that the device of a single term of confinement would frustrate that direction, an ambiguity was created — an ambiguity that the rule of lenity required be resolved in favor of the inmate.
718 A.2d at 1157. Judge Wilner noted that aggregation of sentences in Henderson's case did not lead to any ambiguity and that there was therefore no need to calculate the diminution credits and mandatory release dates separately for his two sentences. He acknowledged that, in recomputing good-conduct credits separately for Henderson's sentences, the DOC had been misled by the "secondary justification" for the Court's decision in Wickes. Id.
In a concurring and dissenting opinion,[3] Judge Chasanow, the author of both the Fields and the Wickes opinions, disagreed sharply with the majority's reasoning. The concurring and dissenting opinion asserted that "the method of calculation described in Wickes that lets non-violent offenders out sooner, but also keeps parole-violating offenders in longer, is a desirable result." 718 A.2d at 1158. Judge Chasanow suggested that an interpretation of the 1992 amendment which benefitted non-violent parole violators but under which violent parole violators fared worse was more consistent with legislative intent in amending § 700. He argued that the majority opinion attempted to accommodate two conflicting constructions of "term of confinement" with the result that an inmate like Henderson had "a kind of savings account where they can bank sentencing diminution credits" against sentences for future crimes.718 A.2d at 1160. He noted that the Parole Commission's revocation of Henderson's parole for his subsequent conviction had the paradoxical effect of decreasing, rather than increasing, his time in custody when the two sentences were aggregated as required by the majority decision.
The concurring and dissenting opinion also relied on a 1996 amendment to § 700 to support its method of computation in Henderson's case. Chapter 567, Laws of Maryland 1996. That legislation added subsection k which provides:
 (1) Except as provided in paragraph (2) of this subsection, if an inmate who is convicted and sentenced to imprisonment for a crime committed while on parole and the parole is revoked, diminution credits that were allowed prior to the inmate's release on parole may not be applied toward the inmate's term of confinement upon return to the Division of Correction.
 (2) Paragraph (1) of this subsection does not apply to any diminution credits earned following the inmate's return to the Division of Correction.
Article 27, § 700(k). The majority opinion responded that this subsection was irrelevant to Henderson's case it as it applied only to sentences imposed after October 1, 1996 and therefore did not pertain to Henderson's situation.718 A.2d at 1157 n. 3. Of course, that section will figure in the computation of mandatory release dates in cases involving sentences imposed after its effective date.
 III Discussion
We cannot claim to provide any better guidance in an Attorney General's opinion to the construction of this statute than the efforts of the Court of Appeals in its three recent opinions. What we can do is attempt to distill the holdings of those cases into practical guidelines for the computation of sentences by the DOC.
First, the definition in § 700(a) clearly speaks of a "term of confinement" in the singular and indicates that a term of confinement consists of all sentences being served by the inmate. The majority opinion in Henderson also makes clear that normally all sentences that are part of a term of confinement are to be aggregated for purposes of computing the inmate's mandatory release date. Thus, except to the extent that rule of lenity or another statute requires disaggregation of sentences for computation of good-conduct credits, all sentences being served by an inmate are part of a single term of confinement with a single date of release.
The title to Chapter 588, Laws of Maryland 1992, demonstrates that, in enacting the 1992 amendment to § 700, the General Assembly sought to expand the availability of good-conduct credits for inmates convicted of non-violent, non-drug offenses for which sentence is imposed on or after October 1, 1992. However, this intention would be thwarted if an inmate is also serving a sentence imposed prior to October 1, 1992, and the inmate's sentences are combined into a single term of confinement with a combined "date of imposition" prior to October 1, 1992. When necessary to give effect to the Legislature's intention to allow increased good-conduct credits, under the rule of lenity, the DOC must compute good-conduct credits separately for sentences imposed before October 1, 1992 from those imposed on or after October 1, 1992.
Thus, as in Fields, an inmate serving sentences for non-violent, non-drug offenses imposed both before and after the effective date of the amendment is entitled to good-conduct credits at the rate of 5 days per month for the pre-amendment sentences and at the new rate of 10 days per month for post-amendment sentences.
A pre-amendment sentence for a drug offense or a crime of violence does not effect the computation of good-conduct credits for a post-amendment sentence for a non-drug, non-violent offense. In such a case, as in Wickes, the inmate earns good-conduct credits for the earlier offense at the rate of 5 days per month and for the latter offense at the new rate of 10 days per month. Of course, under the plain terms of the 1992 amendment, a post-amendment sentence for a crime of violence or listed drug offense will render the inmate ineligible for the new more generous rate and the inmate will earn good-conduct credits at the old rate of 5 days per month.
When, as in Henderson, the post-amendment sentence is for a listed drug offense or a crime of violence and there is no possibility that the inmate could receive the benefit of the higher rate of good-conduct credits, then the sentences should be aggregated for computation of good-conduct credits.
Finally, there is an important qualification if the inmate is serving a sentence imposed after October 1, 1996 for a crime committed while he was on parole and his parole is revoked. In such a case, he will not receive the benefit of diminution credits (including good-conduct credits) earned prior to his release on parole.
The cases and the statute thus suggest that the DOC ask the following questions when computing good-conduct credits for an inmate serving sentences imposed both before and after October 1, 1992:
 A. Are any of the sentences for drug offenses or crimes of violence, as described in Article 27, § 700(d)(2)?
 No. (Fields)
 • Compute good-conduct credits separately for sentences imposed before and after October 1, 1992. • Award 5 days per month credit for sentences imposed prior to October 1, 1992.
 • Award 10 days per month credit for sentences imposed on or after October 1, 1992.
 Yes.
 Were the sentence(s) for drug offenses or crimes of violence imposed (1) before October 1, 1992, (2) on or after that date; or (3) both?
 1. Before October 1, 1992 (Wickes):
 • Compute good-conduct credits separately for sentences imposed before and after October 1, 1992.
 • Award 5 days per month credit for sentences imposed prior to October 1, 1992.
 • Award 10 days per month credit for sentences imposed on or after October 1, 1992.
 2. On or after October 1, 1992:
 • Compute good-conduct credits for sentences imposed before and after October 1, 1992 in aggregate.
• Award 5 days per month credit for all sentences.
3. Both before and after October 1, 1992 (Henderson):
 • Compute good-conduct credits for sentences imposed before and after October 1, 1992 in aggregate.
 • Award 5 days per month credit for all sentences.
 B. Is the inmate serving a sentence imposed on or after October 1, 1996 for a crime committed while he was on parole?
 No.
 • Compute as in A above. Yes.
 • Compute as in A above, but subtract good-conduct credits earned prior to release on parole.
While the outline above covers the common situations likely to be encountered by the DOC in the computation of good-conduct credits, we are no more prescient than the Court of Appeals in foreseeing other possible permutations that may arise. However, the guiding principle that appears in all three of the Court's decisions is that the 1992 amendment was intended to allow a more favorable computation of good-conduct credits for inmates who are sentenced for non-drug, non-violent offenses after October 1, 1992 and that it was not meant otherwise to alter the method of computation of good-conduct credits. The outcome of any unanticipated permutation is likely to be determined by this principle.
 IV Conclusion
In summary, it is our opinion that recent decisions of the Court of Appeals construing Article 27, § 700, require that good-conduct credits be computed in accordance with the following principles:
1. As a general rule, an inmate subject to multiple sentences serves a single term of confinement that begins on the first day of the sentence that begins earliest and ends on the last day of the sentence that ends last. However, in certain circumstances, sentences must be considered separately for purposes of computing good-conduct credits.
2. For all sentences imposed before October 1, 1992, an inmate is entitled to good-conduct credits at the rate of 5 days per month.
3. For all sentences imposed on or after October 1, 1992, so long as none of those sentences is for a crime of violence under or a drug offense as defined in Article 27, § 700(d)(2), an inmate is entitled to good-conduct credits at the rate of 10 days per month. This is true even if the inmate's term of confinement includes sentences imposed before October 1, 1992, for violent crimes or drug offenses.
4. For all sentences imposed on or after October 1, 1992, if at least one of those sentences is for a crime of violence or a drug offense as described in Article 27, § 700(d)(2), an inmate is entitled to good-conduct credits at the rate of 5 days per month.
5. If a sentence is imposed on or after October 1, 1996, for a crime committed while the defendant was on parole and parole is revoked, good-conduct credits earned prior to the defendant's release on parole may not be applied to the term of confinement.
Very truly yours,
 J. Joseph Curran, Jr. Attorney General
 Robert N. McDonald Chief Counsel Opinions and Advice
[1] The person may also receive "street time" credits for time spent out of prison prior to return to prison as a result of a violation of the conditions of mandatory supervision release. Article 41, § 4-511(d).
[2] In its decision, the Court also considered certain issues not directly pertinent to this opinion — whether the plaintiff inmates could use a habeas corpus petition to challenge the calculation of good-conduct credits and whether "street time credits" awarded by the Parole Commission should be deducted from good-conduct credits.
[3] Judge Chasanow dissented from the majority opinion's restriction of the rationale of the Fields and Wickes
decisions, but concurred in the decision to grant habeas corpus relief to Henderson. He would have affirmed the circuit court on the alternative ground that Henderson's arrest following recomputation of his mandatory release date had been accomplished through unconstitutional and improper procedures.718 A.2d at 1161. Judge Chasanow's opinion was joined by Chief Judge Bell and Judge Rodowsky.
 *Page 65