**Vincent HENDERSON, Daryelle Rexrode, John Calella,**

v.

**Stuart O. SIMMS, Richard A. Lanham, Sr., William O. Filbert.**

No. Civ. S 99–949.

United States District Court, D. Maryland.

May 14, 1999.

interest is disallowed as to Exxon's claim.

Ralph S. Tyler, Hogan & Hartson, Baltimore, Md, Eugene J. Yannon, Law Office, Bowie, MD, Douglas R.M. Nazarian, Hogan & Hartson, Baltimore, Md, for Vincent Henderson, Daryelle Rexrode, John Calella, plaintiffs.

J. Joseph Curran, Jr., Office of the Attorney General, Baltimore, MD, Andrew H. Baida, Office of the Attorney General, Baltimore, MD, for Stuart O. Simms, Richard A. Lanham, Sr., William O. Filbert, defendants.

## MEMORANDUM OPINION

SMALKIN, District Judge.

In *Beshears v. Wickes,* 349 Md. 1, 706 A.2d 608 (1998), the Court of Appeals of Maryland had occasion to interpret a Maryland statute granting "diminution credits" to Maryland prison inmates. Based upon the opinion of the Court of Appeals in that case, the defendants, all Maryland public safety officials, determined that a number of inmates who had been released on the basis of credits that were "incorrectly" calculated were not entitled to be at liberty, but should be reincarcerated. Those inmates, among whom were the three plaintiffs in this case, were arrested and reincarcerated through "retake orders." *See Secretary, Dep't. of Pub. Safety and Correctional Servs. v. Henderson,* 351 Md. 438, 447–48, 718 A.2d 1150 (1998). In *Henderson,* the Court of Appeals noted that the sole reason for the reincarceration of the plaintiffs (and some 50 others) was "the [Correctional Services] Division's recalculation of ... diminution credits in accordance with ... *Wickes* " *Id.* The *Henderson* opinion resolved an appeal from an order granting habeas corpus relief to plaintiff Henderson following his retake. In *Henderson,* the Court of Appeals noted that "[u]nfortunately, we used some language in *Wickes* that went beyond what was necessary to the decision." *Id.*

at 445, 718 A.2d 1150. The court concluded that "the expanded 'holding' in *Wickes*, precluding the Division from applying § 700 as it is written ..., was not necessary in order to reach the result in *Wickes." Id.* at 451, 718 A.2d 1150. The *Henderson* majority went on to hold that, in Mr. Henderson's case, there had been an error in the actual recalculation of his sentence by the Division, "understandable in light of the noted language used in *Wickes*, [which] deprived[d] him of the liberty to which he was statutorily entitled." *Id.* at 452, 718 A.2d 1150. Thus, the Court of Appeals affirmed the grant of habeas corpus relief to Mr. Henderson. Four of that court's seven judges were with the majority, which did not undertake any constitutional analysis, confining itself to issues of Maryland statutory interpretation.

Three of the seven judges of the Court of Appeals joined in a concurring and dissenting opinion, observing, in pertinent part, that the plaintiff had been "deprived of his liberty and reincarcerated by the Division of Correction without any prior notice and without being given any opportunity to contest the Division's unilateral action. This is improper." 351 Md. at 459, 718 A.2d 1150 (citing *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)). Apparently relying upon this language, Mr. Henderson and two others similarly situated have brought the present action for damages against various individuals involved in their reincarceration, invoking this Court's jurisdiction under 42 U.S.C. § 1983.

The defendants have moved to dismiss, on the ground of qualified immunity. The plaintiffs oppose dismissal. No oral hearing is needed. Local Rule 105.6, D.Md.

The Supreme Court has held that a motion raising the defense of qualified immunity is to be decided at an early stage in the litigation, so that a defendant who is entitled thereto need not participate in litigation from which he is immune. *See Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

There is no doubt, in this Court's judgment, that the defendants are entitled to qualified immunity (there being no factual dispute, the Court assuming for the present purposes the truth of the facts set forth in the complaint) as a matter of law.

■ In order to be entitled to qualified immunity, public officials must show that their actions, objectively viewed, did not violate clearly established statutory or constitutional rights of which a reasonable official would have known. *Harlow, supra*, at 815–16, 102 S.Ct. 2727.

■ The first question in a qualified immunity inquiry is whether the plaintiff has identified a specific constitutionally-protected right that was violated. *See, e.g., Wagner v. Wheeler*, 13 F.3d 86 (4th Cir.1993). In this case, the plaintiffs apparently do not rely upon the purported substantive due process right of an erroneously released parolee to remain on release, recently recognized by a panel opinion of the Fourth Circuit, *viz., Hawkins v. Freeman*, 166 F.3d 267 (4th Cir.1999). The panel decision in *Hawkins* has been vacated, *see* 1999 WL 173607 (4th Cir. Mar.26, 1999), and, of course, since it predated the defendants' conduct anyway, it certainly could not constitute "clearly established" law of which they should have known. *See, e.g., Hodge v. Jones*, 31 F.3d 157 (4th Cir.), *cert. denied*, 513 U.S. 1018, 115 S.Ct. 581, 130 L.Ed.2d 496 (1994). Rather, plaintiffs rely primarily upon the *Morrissey v. Brewer* procedural due process right discussed in the minority opinion in the Court of Appeals' decision in Mr. Henderson's habeas corpus case.

■ In light, however, of the unique circumstances confronting the Division of Correction in the aftermath of *Wickes*, as fully and repeatedly appreciated by the majority of the Court of Appeals in *Henderson*, and in light of the fact that *Morrissey* arose in an entirely different context than the present case, *viz.*, a parole revocation for cause rather than for

legal error that, according to the state's highest court, rendered the prisoner's release void *ab initio,* this Court holds that the plaintiffs' rights to continued liberty and/or to procedural due process under the unique circumstances of this case were not so clearly established that a reasonable official should have known of them and that the conduct alleged here violated them.

The ultimate determination in a qualified immunity case must be whether there is a legitimate question as to whether what the official did constituted a violation of constitutional rights, *see Tarantino v. Baker,* 825 F.2d 772 (4th Cir.1987), *abrogated on other grounds, Horton v. California,* 496 U.S. 128, 130, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990), giving due regard to the degree of latitude that should be accorded to judgments of state officials in executing their duties. *See Torchinsky v. Siwinski,* 942 F.2d 257 (4th Cir.1991). Indeed, in *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), the Supreme Court made it clear that qualified immunity, at bottom, is to be granted where officials have acted "reasonably, but mistakenly. . . ."

Under these standards, there could hardly be a clearer case for concluding that state officials acted "reasonably, but mistakenly." They were simply making a good faith effort to put into effect what the Court of Appeals later characterized as its own legally erroneous interpretation of Maryland law, without any direction from the Court of Appeals as to how its opinion was to be put into practical effect. As the majority opinion in *Henderson* recognizes over and over, the officials' actions were "understandable" in light of its own *Wickes* decision. Neither *Morrissey* nor any other case clearly establishes that defendants needed to resort to judicial process in executing the *Wickes* holding when returning erroneously released prisoners to custody. This Court acknowledges the *Henderson* minority's reference to due process rights and *Morrissey,* but that ref-

erence was *dictum.* It was not made with a studied appreciation of the differences between the situation in *Morrissey* (where the plaintiff was unquestionably enjoying a legitimate period of liberty between his parole release and its revocation) and the situation confronting these defendants after *Wickes* (under which plaintiffs were not entitled to release *ab initio* ), or with all the considerations relevant to qualified immunity in mind.

This is not to say that the gist of the plaintiffs' argument against qualified immunity lacks surface appeal. They argue, essentially, that any reasonable officer knows that a person cannot be deprived of his liberty without due process of law, including notice and an opportunity for a hearing, or be arrested without probable cause. In their ordinary application to a person at liberty on the street, these fundamental principles certainly are well known to any reasonable officer of the state. (If plaintiffs' argument were to prevail to its utmost, there could hardly ever be a grant of qualified immunity in any due process or unreasonable seizure case. That is, obviously, not the case, as there are many such grants made and even affirmed on appeal.)

What the plaintiffs' argument primarily fails to appreciate is that, to be entitled to procedural due process protection, the liberty interest must first be a "protected" one, which is usually an inquiry based on state law. *See, e.g., Paoli v. Lally,* 812 F.2d 1489 (4th Cir.), *cert. denied,* 484 U.S. 864, 108 S.Ct. 184, 98 L.Ed.2d 137 (1987). Here, faced with state law as it was declared to them by the highest court in Maryland at the time of the retakes, the officers certainly reasonably could have believed that the plaintiffs had no protected liberty interest that demanded pre-deprivation notice and a hearing. As to the fact that the officers used a procedural mechanism for retake that was not precisely suited for the occasion (giving rise to the argument that there was no probable cause to believe the plaintiffs had

"escaped"), the fact of the matter is that the situation they were faced with was truly *sui generis*, and they reasonably could have believed that escape from custody was the closest model for obtaining legal process to effect the retakes required by Maryland law, there being no statute of Maryland covering this unlikely situation. Again, the Court keeps in mind that the bottom-line inquiry is not whether there has been a mistake by officers, but whether that mistake is one for which they should stand trial in a suit for damages. *Anderson*, 483 U.S. at 641, 107 S.Ct. 3034. Their mistake is not one for which these officials should be made to stand trial.

For the reasons stated, an Order will be entered separately, granting the defendants' motion to dismiss, as the present case is barred by qualified immunity.

### ORDER

For the reasons stated in the foregoing Memorandum Opinion, it is, this 14th day of May, 1999, by the Court, ORDERED:

1. That the defendants' motion to dismiss BE, and it hereby IS, GRANTED;

2. That this case BE, and it hereby IS, DISMISSED, as barred by qualified immunity; and

3. That the Clerk of Court mail copies hereof to counsel for the parties.